**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

In re:                                                   **FOR PUBLICATION**

                      Karen Kao,                       Chapter 7

                                              Case No. 18-12350 (MG)

                          Debtor.

------------------------------------------------------------------------x

Ning Yen Yao,

                            Plaintiff,

                     v.                       Case No. AP No. 19-01071 (MG)

Karen Kao,

                          Defendant.

------------------------------------------------------------------------x

### MEMORANDUM OPINION GRANTING PLAINTIFF'S MOTION
### FOR SUMMARY JUDGMENT

*A P P E A R A N C E S :*

BORG LAW LLP
*Attorneys for Plaintiff*
370 Lexington Avenue
Suite 800
New York, NY 10017
By:    Jonathan M. Borg, Esq.

Karen Kao
New York, NY
By:    Karen Kao, *pro se Defendant*

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before this Court is a summary judgment motion filed by Ning Yen Yao ("Plaintiff" or "Yao") against Karen Kao ("Defendant" or "Kao").[1] ("Summary Judgment Motion," ECF Doc. # 14.) Plaintiff Yao and Defendant Kao are parties to a contentious divorce proceeding in New York State Supreme Court (the "State Court") which, as explained below, resulted in a state court judgment that imposes payment obligations on both Yao and Kao. But as most relevant to this adversary proceeding, the state court judgment includes priority of payment provisions that condition Kao's receipt of payments from Yao on Kao's paying her obligation to Yao. Through her chapter 7 bankruptcy, Kao seeks to discharge her debt to her former husband Yao, while still requiring Yao to make payments to her required by the state court judgment even though the state court judgment required that she pay Yao before he had to pay her.

Yao's Summary Judgment Motion seeks an order (1) determining that the New York state court judgment, and subsequent money judgment order that require Kao to pay Yao $236,467.62, with interest at the rate of 9% from January 5, 2018 for non-retirement equitable distribution (the "Obligations"), are not dischargeable and (2) maintaining the priority of payment of the Obligations that require Kao to pay Yao $236,467.62 upon the entry of the judgment of divorce as a condition precedent to Yao's payment to Kao. ("Proposed Order," ECF Doc. # 13-14.) Plaintiff and his counsel filed Declarations in support of the Summary Judgment Motion. ("Plaintiff Decl.," ECF Doc. # 13-1; "Borg Decl.," ECF Doc. # 13-8.) Defendant Kao,

---

[1]        Defendant Kao is also the debtor in the related chapter 7 case. *See In re Karen Kao*, 18-12350-mg (the "Chapter 7 Case").

*pro se*, filed two declarations in opposition to the Summary Judgment Motion. ("Opposition," ECF Doc. # 27; ECF Doc. # 24.)[2]  Plaintiff filed a Reply. ("Reply," ECF Doc. # 28.)

For the reasons set forth below, the Court grants Plaintiff Yao's Summary Judgment Motion because Kao's debts to Yao are not dischargeable under 11 U.S.C. § 523(a)(15); the Court also concludes that, pursuant to the principle of *res judicata,* the State Court's determination that Kao has no right to setoff or offset Yao's obligation to her is binding on this Court. Only a New York state court may amend, modify or reverse the State Court ruling that Kao may not offset Yao's debt to her.

## I.    BACKGROUND

### A.    General Background

On October 11, 2007, Plaintiff Yao filed for divorce in State Court. (Plaintiff Decl. ¶ 3.) On December 27, 2017, pursuant to an agreement made on the record as to issues concerning custody and payment of a distributive award, the State Court issued an Amended Judgment of Divorce. ("Amended Judgment of Divorce," ECF Doc. # 10-1.) The Amended Judgment of Divorce ordered that Defendant Kao must pay Plaintiff Yao $236,467.62 in non-retirement equitable distribution. (*Id.* at 7.) Further, Yao must pay Kao $344,000 over the course of several years as Kao's distributive share of Yao's enhanced earning capacity ("Defendant's Distributive Share"). But the Amended Judgment of Divorce only required Yao to pay Kao *after* he receives Kao's payment. (*Id.* at 7–8.) The Amended Judgment of Divorce separately ordered a division of retirement accounts, child support, and counsel fees from Yao to Kao's former attorney. (*Id.* at 8–11.)

---

[2]      The Declaration filed as ECF Doc. # 24 is substantively similar to the Opposition, ECF Doc. # 27.

3

Subsequently, Yao filed an application for a money judgment for the non-retirement equitable distribution and for counsel fees incurred. On June 1, 2018, the State Court entered a money judgment order. ("Money Judgment Order," ECF Doc. #10-2.)[3] The State Court ordered that Kao pay Yao $236,467.62 with interest at the rate of 9% from January 5, 2018—*i.e.*, the Obligations—pursuant to the Amended Judgment of Divorce, and, separately, pay Yao's counsel fees in the amount of $2,000 within thirty days of entry of the Money Judgment Order. (*Id.* at 3–4.)[4] The Money Judgment Order stated that the State Court's Amended Judgment of Divorce denied Kao's application to offset her Obligations to Yao against Defendant's Distributive Share. Further, Kao's application for enforcement of the Amended Judgment of Divorce with regard to the transfer of marital retirement accounts was granted to the extent that Yao was directed to supply all information requested by Pension Actuaries Inc. for completion of the Qualified Domestic Relation Orders ("QDRO(s)") in this action by June 15, 2018. (*Id.* at 3–4.)

On July 31, 2018, Kao filed a voluntary petition under Chapter 7 of the Bankruptcy Code. ("Petition," Chapter 7 Case, ECF Doc. # 1.) The deadline to file a complaint objecting to Kao's discharge was extended by stipulation to February 28, 2019. ("Stipulation Extending Time to Oppose Discharge," Chapter 7 Case, ECF Doc. # 16; Borg Decl. ¶ 6.)

On February 27, 2019, Yao filed the Complaint commencing this adversary proceeding against Kao to (1) determine that the Obligations set forth in the Amended Judgment of Divorce and Money Judgment Order are non-dischargeable and (2) maintain the priority of Kao's

---

[3]        Yao filed the Amended Judgment of Divorce and Money Judgment Order under seal, pursuant to N.Y. D.R.L. § 235. This Opinion references the terms of those sealed documents only to the extent necessary to explain this decision.

[4]        The Money Judgment Order does not specify whether the interest compounds monthly or yearly.

4

payment of the Obligations as a condition precedent to Yao's payment of his obligations to Kao.

("Complaint," ECF Doc. # 1; Plaintiff Decl. ¶ 9.)  On April 1, 2019, Kao filed an Answer.

("Answer," ECF Doc. # 5.)  At a Case Management Conference on August 21, 2019, the Court

granted Yao's request to file the Summary Judgment Motion.  (Borg Decl. ¶ 15.)

### B.    Summary Judgment Motion

First, Plaintiff argues that the Obligations are not dischargeable because they are either

for a domestic support obligation or debts arising out of a divorce decree or other order in the

context of a matrimonial proceeding.  (Summary Judgment Motion at 7–8 (citing 11 U.S.C. §§

523(a)(5) and (15)).)  Plaintiff contends that the Obligations are moneys that are due to Plaintiff

arising out of the Amended Judgment of Divorce, which is a "divorce decree" within the

meaning of both sections 523(a)(5) and (15).  Even if the debt does not constitute alimony,

maintenance, or support, so as to be not dischargeable pursuant to section 523(a)(5), Plaintiff

argues that it is within the scope of section 523(a)(15), which pertains to all other obligations

arising out of a divorce decree, other than those covered by section 523(a)(5).  (*Id.* at 7–9.)

Second, Plaintiff responds to Defendant's assertion that the Obligations should be set off

against monies due to her from Plaintiff.  (Summary Judgment Motion at 9; Answer ¶ 24.)

Plaintiff argues that Defendant not only fails to provide any legal or equitable basis for this

purported defense but omits to acknowledge that the State Court already specifically rejected her

request for such a setoff.  (Summary Judgment Motion at 9–10.)  Plaintiff contends that the *res

judicata* doctrine precludes Defendant from relitigating this issue and requires that the priority of

Defendant's payment of the Obligations be maintained as a condition precedent to the payment

by Plaintiff to Defendant of amounts due under the Amended Judgment of Divorce.  (*Id.*)

### C.    Defendant's Opposition

Defendant requests that the Court offset Defendant's Obligations to Plaintiff with Plaintiff's obligations toward Defendant, including Defendant's Distributive Share, the division of retirement account assets, and payment of child support arrears.  (Opposition ¶¶ 5–7.)[5] Defendant further requests the Court stop interest from accruing on the Obligations from the date Plaintiff was supposed to divide retirement assets, June 15, 2018, until Plaintiff complies.  (*Id.* ¶ 5.)

Defendant argues that Plaintiff has failed to pay Defendant funds from the retirement accounts, as required by the Amended Judgment of Divorce.  (Opposition ¶ 4; *see* Amended Judgment of Divorce at 8.)  Defendant represents that there is no condition precedent to have Plaintiff comply with the division of retirement assets owed to Defendant.  (Opposition ¶ 4.) Defendant also states that Plaintiff has not provided all necessary statements to Pension Actuaries Inc. as required by the Amended Judgment of Divorce and has failed to comply with other provisions of the Amended Judgment of Divorce regarding retirement assets.  (*Id.*)  On November 12, 2019, Defendant filed a Notice of Settlement in the State Court and the matter regarding the retirement accounts was before the State Court as of the filing of the Opposition. ("Notice of Settlement," ECF Doc. # 27-2 at 8.)  Defendant further represents that a hearing was scheduled for January 30, 2020 in New York State Family Court regarding child support arrears owed by Plaintiff.[6]  (Opposition ¶ 6.)

---

[5]    Defendant filed two attachments under seal, containing a Proposed Domestic Relations Order (ECF Doc. # 27-2, Ex. A) and the Money Judgment Support Order and Violation of Support Order, and related Findings of Fact, dated October 8, 2019 (*Id.*, Ex. B).

[6]    The automatic stay does not apply to a broad range of issues arising in the matrimonial action in State Court.  *See* 11 U.S.C. § 362(b)(2).

### D.    Reply to Summary Judgment Opposition

Plaintiff's Reply argues that Defendant fails to provide any bases for why the priority accorded to the payment of her Obligations to Plaintiff should not be maintained and why her debts to Plaintiff should be determined to be dischargeable.  (Reply at 4.)  Plaintiff contends that issues related to Plaintiff's obligation toward Defendant, including domestic support arrears, are not relevant to the issue of dischargeability before this Court and are rather properly addressed in the matrimonial action before the State Court.  (*Id.*)  Plaintiff also states that while Defendant argues she should be allowed to offset the Obligations against the Distributive Award due to her, the State Court already rejected that position, and that the *Rooker-Feldman* doctrine precludes Plaintiff from relitigating this point.  (*Id.* at 5.)  Further, Defendant's request that the Court stop the interest from accruing on the Money Judgment Order is without legal support.  (*Id.*)

## II.    <u>LEGAL STANDARD</u>

### A.    Summary Judgment

Federal Rule of Civil Procedure 56, applied in bankruptcy court under Federal Rule of Bankruptcy Procedure 7056, sets forth the standards for granting summary judgment. These standards were explained by the district court in *Thomas v. River Greene Constr. Grp. LLC*, No. 17 CIV. 6954 (PAE), 2018 WL 6528493, at *3–4 (S.D.N.Y. Dec. 11, 2018):

> To prevail on a motion for summary judgment, the movant must "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(A).  The movant bears the burden of demonstrating the absence of a question of material fact.  In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party.  *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
>
> If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Jaramillo v.*

> *Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).  "[A] party
> may not rely on mere speculation or conjecture as to the true nature
> of the facts to overcome a motion for summary judgment."  *Hicks v.*
> *Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks
> and citation omitted).  Rather, the opposing party must establish a
> genuine issue of fact by "citing to particular parts of materials in the
> record."  FED. R. CIV. P. 56(c)(1)(A); *see also Wright v. Goord*, 554
> F.3d 255, 266 (2d Cir. 2009).
>
> "Only disputes over facts that might affect the outcome of the suit
> under    the    governing    law"    will    preclude    a    grant
> of summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
> 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  In determining
> whether there are genuine issues of material fact, the Court is
> "required to resolve all ambiguities and draw all permissible factual
> inferences in favor of the party against whom summary judgment is
> sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012)
> (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003))
> (internal quotation marks omitted).

*Id.*

To survive a summary judgment motion, the opposing party must establish a genuine

issue of fact by "citing to particular parts of materials in the record."  FED. R. CIV. P. 56(c)(1).

### B.    Whether Debt is Dischargeable

The Bankruptcy Code includes a list of debts that are not dischargeable.  Of relevance

here, the Code excepts from discharge any debt "for a domestic support obligation."  11 U.S.C. §

523(a)(5).  The Bankruptcy Code also excepts from discharge any debt "to a spouse, former

spouse, or child of the debtor and not of the kind described in paragraph [523(a)](5) that is

incurred by the debtor in the course of a divorce or separation or in connection with a separation

agreement, divorce decree or other order of a court of record . . . ."  *Id.* § 523(a)(15).

The Bankruptcy Code defines the term "domestic support obligation" used in section

523(a)(5) as:

> [A] debt that accrues before, on, or after the date of the order for
> relief in a case under this title, including interest that accrues on that

8

debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—

(A) owed to or recoverable by—

> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or

> (ii) a governmental unit;

(B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—

> (i) a separation agreement, divorce decree, or property settlement agreement;

> (ii) an order of a court of record; or

> (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A).

For a court to find that a debt is excluded from discharge under section 523(a)(5), a party must demonstrate that "(1) the debt must be owed to or recoverable by the child . . . [, parent, or spouse]; (2) the debt must be in the nature of alimony, maintenance, or support; and (3) the debt must have been established by reason of applicable provisions of an order of a court of record." *Galati v. Navarrete* (*In re Galati*), No. 8-14-73159-LAS, 2018 WL 2997017, at *4 (Bankr. E.D.N.Y. June 12, 2018). "The determination of what constitutes a domestic support obligation

is based on principles of federal law and is a fact intensive inquiry." *Grinspan v. Grinspan* (*In re Grinspan*), 597 B.R. 725, 737 (Bankr. E.D.N.Y. 2019).

Second, for a court to except dischargeability under section 523(a)(15) "the debt must: (1) be to a spouse, former spouse, or child of the debtor; (2) not be the type described in section 523(a)(5), i.e., not a domestic support obligation; and (3) have been incurred in the course of a divorce or separation in connection with a separation agreement, divorce decree, or other order of a court." *Martelloni v. Martelloni* (*In re Martelloni*), No. 12-75072-AST, 2013 WL 5873264, at *4 (Bankr. E.D.N.Y. Oct. 31, 2013).

"Federal bankruptcy law, not state law, determines whether an obligation is a domestic support obligation." *In re Dudding*, No. 10-10557, 2011 WL 1167206, at *5 (Bankr. D. Vt. Mar. 29, 2011). Still, in chapter 7 cases, the determination whether a debt qualifies as a domestic support obligation or a different type of obligation resulting from a divorce or separation "is of no consequence, as all of these debts are non-dischargeable." *Forney v. Forney* (*In re Forney*), No. 14-72143-REG, 2015 WL 1757117, at *2 (Bankr. E.D.N.Y. Apr. 14, 2015); *see also Tarone v. Tarone* (*In re Tarone*), 434 B.R. 41, 49 (Bankr. E.D.N.Y. 2010) (finding that "it is irrelevant" whether maintenance and attorneys' fees sustained by the Debtor in the course of divorce proceedings "constitute true support obligations, because even if not encompassed within § 523(a)(5), they are nondischargeable pursuant to § 523(a)(15)").

The Court concludes, as a matter of bankruptcy law, that Kao's Obligations to Yao are not dischargeable under section 523(a)(15). What remains is for the Court to determine whether Defendant Kao should be entitled to setoff Yao's obligations to her in determining whether or to what extent she should be denied a discharge of her Obligations to Yao. As already indicated, the State Court ruled on this issue in the Amended Judgment of Divorce, denying Kao's

10

argument that she is entitled to offset Yao's obligations to her.  Plaintiff argues that *res judicata*

or the *Rooker-Feldman* doctrine bar this Court from deciding this argument contrary to the State

Court decision.  Those arguments are considered below.  In considering those arguments,

however, there is a more fundamental point: the Bankruptcy Code does *not* create a right of

setoff.  Here, the issue is controlled by New York law, an issue already resolved by the State

Court in the Amended Judgment of Divorce.

### C.        State Law Controls Whether Setoff is Available

Section 553 of the Bankruptcy Code provides, except in limited circumstances not

present here, that the Bankruptcy Code "does not affect any right of a creditor to offset a mutual

debt owing by such creditor to the debtor that arose before the commencement of the case under

this title against a claim of such creditor against the debtor that arose before the commencement

of the case . . . ." 11 U.S.C. § 553(a).  The Supreme Court has definitively resolved that the

Bankruptcy Code does not *create* a right of setoff; section 553, with certain exceptions not

relevant here, *preserves* a right to setoff created by state law or federal nonbankruptcy law.  As

the Supreme Court has stated:

> The right of setoff (also called 'offset') allows entities that owe each
> other money to apply their mutual debts against each other, thereby
> avoiding "the absurdity of making A pay B when B owes A."
> Although no federal right of setoff is created by the Bankruptcy
> Code, 11 U.S.C. § 553(a) provides that, with certain exceptions,
> whatever right of setoff otherwise exists is preserved in bankruptcy.

*Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995) (citation omitted).

*Strumpf* involved a chapter 13 bankruptcy case.  The debtor was in default on a loan from

the bank, and the bank's account agreement expressly provided the bank with the right of setoff.

Before the debtor filed the bankruptcy case, the bank froze the debtor's checking account.  After

the bankruptcy filing, the bank refused to unfreeze the account and turn over the funds in the

11

account to the debtor.  The bank filed a motion for relief from the automatic stay under section

362(d); the debtor countered with a motion to hold the bank in contempt for violating the

automatic stay.  *See Strumpf*, 516 U.S. at 17–18.  The automatic stay under section 362(a)(7) of

the Bankruptcy Code bars a creditor from taking various actions, including "the setoff of any

debt owing to the debtor that arose before the commencement of the case against any claim

against the debtor."  11 U.S.C. § 362(a)(7).  The bankruptcy court found that the account freeze

violated the automatic stay and sanctioned the bank.  Several weeks later, the bankruptcy court

granted the bank's motion to lift the stay to permit the setoff.  *See Strumpf*, 516 U.S. at 17–18.

After stating the rule that there is no federal right to setoff under the Bankruptcy Code,

the Court went on to conclude that "the question whether a setoff under § 362(a)(7) has occurred

is a matter of federal law . . . ."  *Id.* at 19.  But the right to setoff was determined by

nonbankruptcy law.

*Strumpf* is not alone in stating this very clear rule that the Bankruptcy Code does not

create a right of setoff.  *See In re Bennett Funding Grp., Inc*., 146 F.3d 136, 138–39 (2d Cir.

1998) ("Section 553(a) of Title 11 of the United States Code does not create a right of setoff, but

rather preserves whatever right exists under applicable non-bankruptcy law.") (footnote omitted);

*Feltman v. Noor Staffing Group, LLC (In re Corporate Resource Services, Inc.)*, 564 B.R. 196,

201–04 (Bankr. S.D.N.Y. 2017) (holding that the Bankruptcy Code does not create a right of

settoff); *Bank of Am. v. Lehman Bros. Holdings Inc.* (*In re Lehman Bros. Holdings Inc.)*

(*Lehman I* ), 439 B.R. 811, 823 (Bankr. S.D.N.Y. 2010) ("Section 553 of the Bankruptcy Code

does not provide for an independent right of setoff[.]"); *In re Delta Air Lines*, 341 B.R. 439, 443

(Bankr. S.D.N.Y. 2006) ("Section 553 does not create a federal right of setoff, nor does it

enhance, diminish or otherwise modify any state law right of setoff."); *In re McLean Indus., Inc.*,

12

90 B.R. 614, 618 (Bankr. S.D.N.Y. 1988) ("Section 553 is, however, not an independent source

of a right to setoff; rather, it recognizes and preserves, but does not define, the common law right

of setoff under nonbankruptcy law.  A creditor seeking to setoff a debt under Title 11, therefore,

must establish a claim and a right to setoff by applying the law of the state where the operative

facts occurred . . . .  Section 553, moreover, does not expand nonbankruptcy rights and clearly

provides that the automatic stay provisions of section 362 limit post-petition setoff rights,

requiring creditors to obtain court permission before taking any action against the property of the

estate.") (internal citations omitted).

In order to establish a right to setoff under section 553, a creditor must first demonstrate a

preexisting right of setoff under nonbankruptcy or state law.  *See In re WL Homes LLC*, 471 B.R.

349, 352 (Bankr. D. Del. 2012) (stating that creditor must "first establish its right to setoff by

finding an independent right of setoff under non-bankruptcy law"); *Charles Russell, LLP v.

HSBC Bank USA, N.A.* (*In re Awal Bank, BSC* ), 455 B.R. 73, 87 (Bankr. S.D.N.Y. 2011)

("[Section] 553 requires the court to analyze the applicable nonbankruptcy law before dealing

with a set-off[.]"); *Lehman I*, 439 B.R. at 823 (noting that section 553 incorporates any

preexisting setoff right that may exist under state law); *see also* 5 COLLIER ON BANKRUPTCY ¶

553.04 (16th ed. rev. 2013) ("Section 553 of the Bankruptcy Code does not create any setoff

right; it merely preserves certain rights of setoff that exist *under nonbankruptcy law*.") (emphasis

added) (footnote omitted).

The creditor asserting the right to setoff has the burden to establish that the right to setoff

exists.  *See Geron v. Schulman* (*In re Manshul Constr. Corp.*), No. 96B44080 (JHG), 2000 WL

1228866, at *56 (S.D.N.Y. Aug. 30, 2000); *McLean Indus., Inc.*, 90 B.R. at 618 ("The burden of

proof, moreover, squarely rests with [the creditor] in demonstrating its entitlement to setoff in

light of the facts of this case.") (citing *Pester Refining Co. v. Mapco Gas Prods., Inc.*, 845 F.2d 1476, 1486 (8th Cir. 1988) (stating that the burden is on creditors to establish valid rights of setoff)); *see also Glob. Cable, Inc. v. Adelphia Commc'ns Corp.* (*In re Adelphia Commc'ns Corp.*), No. 02 Civ. 9770 (RCC), 2006 WL 1559437, at *4 (S.D.N.Y. June 7, 2006).

Here, of course, the State Court has already ruled in the Amended Judgment of Divorce that Kao may not setoff or offset Yao's obligations to her. Only the State Court may alter, modify, or reverse that ruling. It is that ruling as to which the arguments about *res judicata* or *Rooker-Feldman* doctrine must be addressed.

### D.    *Res Judicata*

Plaintiff argues that the doctrine of *res judicata* requires that the priority of Defendant's payment of the Obligations be maintained as a condition precedent to the payment by Plaintiff of amounts due to Defendant under the Amended Judgment of Divorce because the issue was already decided by the State Court. (Summary Judgment Motion at 9–10.)

*Res judicata,* or claim preclusion, provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir.1994) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). "[T]he preclusive effect of a state court determination in a subsequent federal action is determined by the rules of the state where the prior action occurred . . . ." *New York v. Sokol (In re Sokol)*, 113 F.3d 303, 306 (2d Cir. 1997) (citing 28 U.S.C. § 1738). Furthermore, in the bankruptcy context, the court must also consider "whether an independent judgment in a separate proceeding would 'impair, destroy, challenge, or invalidate the enforceability or effectiveness' of the reorganization plan." *Corbett v. MacDonald Moving Servs., Inc.*, 124 F.3d 82, 88 (2d Cir. 1997) (quoting *Sure–Snap Corp. v. State St. Bank and Trust*

*Co.*, 948 F.2d 869, 875–76 (2d Cir. 1991)). "In applying the doctrine of *res judicata*, [a court] must keep in mind that a state court judgment has the same preclusive effect in federal court as the judgment would have had in state court." *Burka v. New York City Transit Auth.*, 32 F.3d 654, 657 (2d Cir. 1994) (citation omitted); *see also In re Residential Capital, LLC*, 501 B.R. 624, 635 (Bankr. S.D.N.Y. 2013).

When the elements for *res judicata* are satisfied, bankruptcy courts may look behind a state court decision only where such judgment was obtained by fraud or collusion, or where the state court lacked jurisdiction. *Kelleran v. Andrijevic*, 825 F.2d 692, 694 (2d Cir. 1987). "'[F]raud in the procurement of a judgment' sufficient to warrant relief therefrom is properly identified with 'fraud on the court,' *i.e.* 'fraud which is directed to the judicial machinery itself and is not fraud between the parties . . . .'" *In re Laing*, 945 F.2d 354, 358 (10th Cir. 1991) (quoting *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985) (en banc)) (denying reconsideration of state court judgment where alleged fraud "was not . . . *directed at* the *state court* that rendered the judgment" but instead "related to the events that made up the *subject matter* of the state court action"); *see Residential Capital*, 501 B.R. at 636.

The doctrine of *res judicata* dictates that a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). *Res judicata* is an absolute bar "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1463 (2d Cir. 1996) (internal citation and quotation marks omitted).

The Second Circuit has opined that "[u]nder the doctrine of claim preclusion," a principle encompassed by the *res judicata* doctrine, "a judgment, once rendered by a court of competent jurisdiction, will be treated thereafter as the full measure of relief to be accorded between the same parties on the same . . . [claim or] cause of action." *Murphy v. Gallagher*, 761 F.2d 878, 879 (2d Cir. 1985) (internal citation and quotation marks omitted). Claim preclusion applies if the previous decision was: "(1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 221–22 (2d Cir. 2012). Further, if the judgment is a state court judgment, New York law applies to the *res judicata* analysis. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

Courts in the Second Circuit have also articulated a deference to New York State courts in matrimonial disputes. "[A] final judgment of divorce settles the parties' rights pertaining not only to those issues that were actually litigated, but also to those that could have been litigated." *Levin v. Barone*, No. 14-CV-673 (AJN), 2018 WL 1626526, at *3 (S.D.N.Y. Mar. 29, 2018), *aff'd*, 771 F. App'x 39 (2d Cir. 2019) (internal citation and quotation marks omitted). Further, "New York courts have expressed a preference for the resolution of all issues relating to the marriage relationship, including all important ancillary issues such as support, to be determined in a single matrimonial action." *Levin*, 771 F. App'x at 40 (internal citations and quotation marks omitted).

The Court concludes here that *res judicata* applies to the State Court decision and that, under New York law, Kao is not entitled to setoff or offset Yao's obligation to her.

### E.   *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine is premised upon two Supreme Court decisions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  In *Lance v. Dennis*, 546 U.S. 459 (2006), the Supreme Court explained:

> The *Rooker-Feldman* doctrine takes its name from the only two cases in which we have applied this rule to find that a Federal District Court lacked jurisdiction.  In *Rooker*, a party who had lost in the Indiana Supreme Court, and failed to obtain review in this Court, filed an action in Federal District Court challenging the constitutionality of the state-court judgment.  We viewed the action as tantamount to an appeal of the Indiana Supreme Court decision, over which only this Court had jurisdiction, and said that the aggrieved litigant cannot be permitted to do indirectly what he no longer can do directly.  *Feldman*, decided 60 years later, concerned slightly different circumstances, with similar results.  The plaintiffs there had been refused admission to the District of Columbia bar by the District of Columbia Court of Appeals, and sought review of these decisions in Federal District Court.  Our decision held that to the extent plaintiffs challenged the Court of Appeals decisions themselves—as opposed to the bar admission rules promulgated nonjudicially by the Court of Appeals—their sole avenue of review was with this Court.

*Lance*, 546 U.S. at 463 (internal quotation marks and citations omitted).

The *Rooker-Feldman* doctrine precludes a losing party in state court who complains of injury caused by the state court judgment from bringing a case seeking review and rejection of that judgment in federal court.  *Exxon Mobil Corp. v. Saudi Basic Indust. Corp.*, 544 U.S. 280, 284 (2005).  The federal court is further precluded from reviewing "a new legal theory." *Lake Charles Retail Dev. LLC v. LBUBS 2004–C8 Derek Drive, LLC* (*In re Lake Charles Retail Dev. LLC*), No. 13-44093 (NHL), 2014 WL 4948234, at *6 (Bankr. E.D.N.Y. Sept. 30, 2014).  Bankruptcy courts cannot, in effect, sit as appellate courts for adverse rulings against a now-debtor in bankruptcy court that lost in state court.  A federal court may however possess subject matter jurisdiction when reviewing an "independent claim, albeit one that denies a legal

conclusion that a state court has reached in a case to which he was a party." *Exxon*, 544 U.S. at 293.

Most attempts to relitigate an issue determined in a state case are properly analyzed under issue or claim preclusion principles rather than *Rooker-Feldman* because, in addition to the inherently limited scope of *Rooker-Feldman*, preclusion in federal court on the basis of a state court judgment is determined by state law, not federal law. As the Supreme Court has said, "incorporation of preclusion principles into *Rooker-Feldman* risks turning that limited doctrine into a uniform *federal* rule governing the preclusive effect of state-court judgments, contrary to the Full Faith and Credit Act." *Lance at* 465–66 (emphasis in original) ("A more expansive *Rooker-Feldman* rule would tend to supplant Congress' mandate, under the Full Faith and Credit Act, 28 U.S.C. § 1738, that federal courts give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged. Congress has directed federal courts to look principally to *state* law in deciding what effect to give state-court judgments."). Pursuant to the *Rooker-Feldman* doctrine, federal courts, other than the U.S. Supreme Court, lack subject matter jurisdiction over reviewing state court decisions. *In re Lake Charles Retail Dev. LLC*, 2014 WL 4948234, at *4.

The Court finds it unnecessary here to decide whether the narrow *Rooker-Feldman* doctrine applies to the facts and circumstances of this matter as the Court has already concluded that *res judicata* bars any determination by this Court whether setoff or offset applies to Kao's Obligations to Yao.

18

### III.    DISCUSSION

**A.    Defendant's Obligations Are Not Dischargeable Pursuant to 11 U.S.C. § 523(a)(15)**

Defendant's Obligations arising under the Amended Judgment of Divorce and subsequent Money Judgment Order are not dischargeable under section 523(a)(15) of the Bankruptcy Code. The Court rejects Plaintiff's argument that the debt is also not dischargeable under section 523(a)(5) which excepts from discharge "a domestic support obligation," including "alimony, maintenance, or support" to a former spouse.  11 U.S.C. §§ 101(14A) and 523(a)(5).

The Obligations satisfy the three elements required to except debt from discharge under section 523(a)(15) as articulated by the court in *In re Martelloni*, 2013 WL 5873264, at \*4. "[T]he debt must: (1) be to a spouse, former spouse, or child of the debtor; (2) not be the type described in section 523(a)(5), i.e. not a domestic support obligation; and (3) have been incurred in the course of a divorce or separation in connection with a separation agreement, divorce decree, or other order of a court." *Id.*

First, the debt is to Defendant's former spouse, the Plaintiff.  Second, the debt is not a domestic support obligation as described in section 523(a)(5) and defined in section 101(14A). *In re Martelloni*, 2013 WL 5873264, at \*4.  The Amended Judgment of Divorce ordered that upon its entry Defendant must pay Plaintiff an amount of $236,467.62 in "non-retirement equitable distribution," which is not a type of domestic support.  (Amended Judgment of Divorce at 3–7.)  Still, the question of whether divorce decree obligations qualify as alimony, maintenance, or support, or instead equitable distribution "is a question of bankruptcy law to be decided by the bankruptcy court on the basis of all the facts and circumstances."  *Duffy v. Taback (In re Duffy)*, 331 B.R. 137, 141 (Bankr. S.D.N.Y. 2005), *aff'd*, 344 B.R. 237 (S.D.N.Y. 2006). In this case, the Obligations owed by Defendant were calculated based on assets in bank

accounts and a loan receivable from Defendant's parents, to be paid immediately upon entry of the Amended Judgment of Divorce.  (Amended Judgment of Divorce at 3–7.)  The proximity of Plaintiff's payment of the award to the entry of Judgment, to be paid as a lump sum, together with the manner in which the State Court calculated the division of assets without any reference to support, demonstrate that the Judgment was not a type of support excepted under section 523(a)(5), but rather an equitable distribution.  Third, the Obligations were incurred in the course of a divorce decree.  (*See* Amended Judgment of Divorce; Money Judgment Order.)  Therefore, the Obligations are not dischargeable under section 523(a)(15).  *See In re Duffy*, 331 B.R. at 141.

> **B.**     *Res Judiciata* **Applies to the Priority of Payment Provision of the Amended Judgment of Divorce**

The principle of *res judicata* precludes this Court from reviewing the State Court ruling giving priority to Defendant's Obligations to Plaintiff.  The State Court's Amended Judgment of Divorce satisfied the requirements for *res judicata*, as the State Court decision was a "(1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action."  *Hecht*, 691 F.3d at 221–22.

First, Defendant seeks for this Court to review a final judgment on the merits entered by the State Court which ordered the offset of Defendant's Obligations with Plaintiff's obligations to Defendant.  A judgment of divorce is a "prior judgment on the merits."  *Levin*, 2018 WL 1626526, at \*4; *see also Federated Dep't Stores*, 452 U.S. at 398 ("A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.")  Further, a divorce judgment "settles the parties' rights pertaining not only to those issues that were actually litigated, but also to those that could have been litigated."  *Levin*, 2018 WL 1626526, at \*3 (internal citation and quotation marks omitted). The Amended Judgment of Divorce mandates that Plaintiff pay Defendant "a tax free

distributive award in the amount of $344,000, representing 10% of the value of the marital

portion of Plaintiff's enhanced earning capacity." (Amended Judgment of Divorce at 7.)

Plaintiff was ordered to pay Defendant $44,000 upon entry of the Judgment, but only after

Defendant first pays Plaintiff $236,467.62 in "non-retirement equitable distribution." (*Id.*)

Plaintiff will pay Defendant $50,000 without interest on the anniversary date of the entry of the

Amended Judgment of Divorce Judgment, yearly, until the full amount is paid. (*Id.* at 7–8). The

State Court does not require Plaintiff to satisfy this requirement before Defendant needs to pay

Plaintiff the Obligations. The Amended Judgment of Divorce also ordered the equal division of

certain retirement accounts, and that Plaintiff pay Defendant child support, but neither of those

requirements are related to Defendant's payment of the Obligations. (*Id.* at 7–9.) The Money

Judgment Order subsequently denied Defendant's application to offset her Obligations to

Plaintiff. (Money Judgment Order at 2.) Therefore, the Amended Judgment of Divorce

constitutes a final judgment on the merits.

In addition, the State Court's Amended Judgment of Divorce was a decision by a "court

of competent jurisdiction," involving the same parties and the same cause of action, *i.e.*, whether

Defendant can offset her Obligations to Plaintiff against the Distributive Share. (Amended

Judgment of Divorce at 7; Money Judgment Order at 2.) Therefore, *res judicata* precludes this

Court from reviewing the State Court's decision to not permit Defendant to offset her debts

against the Distributive Share. This Court may not decide whether to offset the Obligations

against other obligations owed by Plaintiff, such as child support arrears and certain divisions of

retirement accounts. Similarly, this Court cannot decide to stop interest from accruing on the

Obligations from the date Plaintiff was supposed to divide retirement assets, June 15, 2018. *See*

*Levin*, 2018 WL 1626526, at *3 (finding that "[t]he doctrine of *res judicata* bar[s] a later claim

arising out of the same factual grouping as an earlier litigated claim even if the later claim is
based on different legal theories or seeks dissimilar or additional relief").

### C.      Summary Judgment

Plaintiff has satisfied the standards for granting summary judgment set forth by Federal
Rule of Civil Procedure 56, applied in bankruptcy court under Federal Rule of Bankruptcy
Procedure 7056.  First, "the movant bears the burden of demonstrating the absence of a question
of material fact." *Thomas*, 2018 WL 6528493, at *3.  Plaintiff's counsel set forth an accurate
summary of the Amended Judgment of Divorce and Money Judgment Order.  ("Statement of
Undisputed Facts," ECF Doc. # 13-13.)  Further, the Money Judgment Order states that
"Defendant does not deny that she has not paid Plaintiff the sums she owes."  (Money Judgment
Order at 1–2.)  In viewing all the facts "in the light most favorable" to the non-moving party, the
Court finds that Plaintiff satisfied his burden of demonstrating the lack of a factual dispute.  *See
Holcomb*, 521 F.3d at 132.

Further, Defendant did not contest the material facts in her Opposition.  *See Jaramillo*,
536 F.3d at 145 (finding that if the movant satisfies its burden, "the nonmoving party must come
forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to
avoid summary judgment").  Plaintiff has also satisfied, for the reasons set forth above, that "the
movant is entitled to judgment as a matter of law" that Defendant's Obligations are not
dischargeable and that this Court does not have the jurisdiction to review the State Court's
decision that Defendant must first pay the Obligations before Plaintiff pays Defendant's
Distributive Share.  FED. R. CIV. P. 56(a).

## IV.    CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's Summary Judgment Motion and

determines that (1) the Obligations set forth in the Amended Judgment of Divorce and Money

Judgment are non-dischargeable in Defendant Kao's Chapter 7 Case and (2) the priority of

payments of the Obligations, as specified in the Amended Judgment of Divorce, as a condition

precedent to payment of the Distributive Share to Defendant Kao shall be maintained unless

amended, modified or reversed by the State Court.

Plaintiff's counsel shall prepare and submit a separate judgment consistent with this

Opinion.

Dated:      February 6, 2020
            New York, New York

                              _Martin Glenn_____

                              MARTIN GLENN
                              United States Bankruptcy Judge